UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNE M. MONTESANO,

                              Plaintiff,

                                                                      <u>DECISION AND ORDER</u>

                                                                          10-CV-6676L

                              v.

WESTGATE NURSING HOME, INC.,
AGNES GAULIN, as an Aider and Abbettor,

                                           Defendants.
_____

**INTRODUCTION**

This action is brought by Anne M. Montesano against two defendants, Westgate Nursing Home, Inc. ("Westgate") and Agnes Gaulin, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12101 *et seq.*, and the New York State Human Rights Law ("HRL"), N.Y. Exec. Law, § 490 *et seq.* Plaintiff, a former employee of Westgate, alleges that due to her physical disability, defendants discriminated against her, harassed her, and ultimately terminated her employment.

Plaintiff moves for summary judgment on the issue of liability as to her first and second causes of action, which assert discrimination claims under the ADA and the HRL respectively. The Court heard argument on July 15, 2013. For the following reasons, the motion is denied.

**FACTUAL BACKGROUND**

Since plaintiff is the moving party, the Court, for purposes of the pending motion, does not assume the truth of her allegations. *See Young v. County of Los Angeles*, 655 F.3d 1156, 1158-59 (9th Cir. 2011) ("on summary judgment the evidence of the non-moving party is assumed to be true"). Nevertheless, the Court sets forth the facts as alleged by plaintiff, by way of background.

In February 2008, Westgate hired plaintiff as a full-time registered nurse. Plaintiff was hired by Westgate's then-director of nursing, Dawn LaMagna.

Plaintiff allegedly suffers from a disability due to a vitamin B-12 deficiency, which limits her motor skills, including her ability to walk, which in turn requires her to use a walker. Plaintiff alleges that she disclosed her condition to LaMagna prior to being hired, and that LaMagna assured plaintiff that appropriate accommodations would be made for her, to enable plaintiff to perform her job.

For the first few months of her employment, plaintiff was accommodated, as promised; she was allowed to sit at her desk most of the time, and, for those times when plaintiff did need to walk (to check on patients, for example), a basket was affixed to her walker to help her carry patient charts. Plaintiff alleges that she was able to perform her job duties satisfactorily.

From the beginning of plaintiff's employment, however, defendant Gaulin, who was then the assistant director of nursing, took issue with plaintiff's relative lack of mobility and her dependence on a walker. Gaulin's objections did not pose a significant problem for plaintiff at first, but at some point LaMagna left Westgate, and Gaulin became the new director of nursing.[1] Plaintiff alleges that Gaulin instructed other employees not to help plaintiff with such things as carrying food from the cafeteria and opening doors. She also claims that Gaulin imposed new job duties on her, which involved considerably more walking than before.

---

[1] According to the complaint, Gaulin became the de facto director of nursing because LaMagna was terminated and no one was hired or promoted to replace her. Dkt. #2 at 4 ¶ 18.

Plaintiff told Gaulin that these new duties were not a part of her job duties when she was hired, and that LaMagna had hired her for what was mostly a desk job. Gaulin stated that if it had been up to her, she would not have hired plaintiff. She insisted that plaintiff perform the newly-imposed, additional duties, and she stated that plaintiff needed to purchase a motorized scooter, out of her own pocket, to enable her to get around the facility more easily. Gaulin allegedly threatened to fire plaintiff if she did not buy a scooter. Plaintiff did then purchase a scooter, using her own funds.

On July 6, 2009, Gaulin told plaintiff she was being terminated because of her limited mobility and because her handwriting was "messy" (which plaintiff alleges was caused by her motor-skill impairment).[2] Two days later, however, Gaulin informed plaintiff that she was not being terminated, but had been reassigned to a position in the medical records department.

Although that new position, which involved doing patient "chart audits," presumably did not require as much ambulation as before, plaintiff allegedly got no training for her new job, and Westgate failed to follow through on its promise to build a ramp for plaintiff to make it easier for her to get to her workplace.

On September 2, 2009, plaintiff was informed that her employment was terminated. Plaintiff alleges that the reason she was given was that "she was too slow on the computer, was not using the mouse correctly, and had not performed certain job duties ... ." Dkt. #2 ¶ 34. Gaulin has testified that the reason for plaintiff's termination was her lack of "eye/hand coordination" using a computer mouse, and her general lack of proficiency using a computer. See Dkt. #17-4 ¶ 31 and citations therein.

Based on these allegations, plaintiff asserts four causes of action: (1) an ADA claim based on alleged harassment, disability discrimination, and a hostile work environment; (2) a parallel claim

---

[2]The complaint states that Gaulin told plaintiff that she was being terminated because of both her handwriting and her limited mobility. Dkt. #2 ¶ 26. Plaintiff's Rule 56 Statement of Undisputed Material Facts states that Gaulin only referenced plaintiff's bad handwriting. Dkt. #17-4 ¶ 30.

under the HRL; (3) an ADA retaliation claim; and (4) a parallel claim under the HRL. The third cause of action is asserted only against Westgate, while the others are asserted against both defendants. Plaintiff seeks summary judgment on the issue of liability, on the first two causes of action only.

## DISCUSSION

**I. Standard of Review**

Summary judgment will be granted if the moving party can demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Rodriguez v. City of New York,* 72 F.3d 1051 (2d Cir. 1995). In making this determination, the Court must draw all factual inferences in favor of the non-moving party. *Rodriguez,* 72 F.3d at 1061.

As plaintiff concedes, it is unusual for a plaintiff to move for summary judgment, particularly in discrimination cases, in which the defendants' knowledge and intent are often at issue. *See Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir. 1990) (noting that it is "the rare [discrimination] case where it is the plaintiff's motion for summary judgment that was granted"); *Guardian Angel Credit Union v. MetaBank*, No. 08-CV-261, 2011 WL 2784078, at *8 (D.N.H. July 14, 2011) ("It is ... a rare case in which the party with the burden of proof will be entitled to summary judgment"). But the burden on plaintiff is not impossible to meet, and where the undisputed facts warrant it, summary judgment can certainly be entered in a plaintiff's favor. *See*, *e.g.*, *Coffman v. Robert J. Young Company, Inc.,* 871 F. Supp. 2d 703 (M.D.Tenn. 2012); *Alexander v. Trilogy Health Services LLC,* No. 11-CV-295, 2012 WL 5268701 (S.D.Ohio Oct. 23, 2012).

Plaintiff's first and second causes of action are brought under the ADA and NYSHRL respectively. The elements of both claims are essentially identical. *See Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (noting that the "same elements" must be proved to establish

ADA or HRL disability claims). For the sake of convenience, the Court will mostly limit its discussion to plaintiff's ADA claim.[3]

To be entitled to summary judgment, plaintiff must first establish a *prima facie* claim of disability discrimination under the ADA. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867 (2d Cir. 1998); *McCowan v. HSBC Bank USA, N.A.,* 689 F. Supp.2d 390, 398 (E.D.N.Y. 2010). To do this, plaintiff must demonstrate that: (1) Westgate is subject to the ADA; (2) plaintiff is disabled within the meaning of the statute; (3) Westgate was aware of her disability; (4) she could perform the essential functions of job with or without reasonable accommodation; and (5) she was subject to an adverse employment action because of her disability. *See Rambacher v. Bemus Point Cent. Sch. Dist.,* 307 Fed.Appx. 541, 543-44 (2d Cir. 2009); *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 99 (2d Cir. 2003).

**II. Whether Plaintiff is Disabled**

The ADA defines "disability" as: "A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; B) a record of such an impairment; or C) being regarded as having such an impairment." 42 U.S.C. §12102(2).

The HRL defines "disability" somewhat more broadly as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques ... ." N.Y. Exec. Law § 292(21). Thus, the HRL "provides that disabilities are not limited to physical or mental impairments, but may also include 'medical' impairments," and, in addition, "unlike the ADA, the NYSHRL does not impose the requirement that the impairment substantially limit the individual's normal activities." *Penberg v. HealthBridge Mgmt.*, 823 F.Supp.2d 166, 182 (E.D.N.Y. 2011) (internal quotes omitted). "Aside from the law's

---

[3]There is a difference between the ADA's and HRL's definitions of "disability," which is discussed below.

unique definition of 'disability,'" however, claims under the HRL are analyzed under the same burden-shifting framework as ADA claims. *Id.*

Regardless of which statute plaintiff's claims are analyzed under, she has not established, *as a matter of law*, that she is disabled. In particular, plaintiff has not presented any medical evidence, such as a physician's diagnosis, showing the nature and extent of her alleged disability. Plaintiff has also not proffered any medical evidence, aside from her own belief, that her alleged vitamin deficiency has caused her alleged physical impairments.

A review of the case law indicates that medical evidence is not necessarily a *sine qua non* of a disability discrimination claim, but such evidence is unquestionably important. *See*, *e.g.*, *Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 858-59 (9th Cir. 2009) ("At the summary judgment stage, precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity. Rather, a plaintiff's testimony may suffice to establish a genuine issue of material fact") (vacating entry of summary judgment for defendant employer) (internal quote omitted). The fact remains, however, that plaintiff does have the burden of demonstrating that her impairment substantially limits a major life activity. *See Weixel v. Board of Educ. Of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002).

A number of factors enter into the "substantially limits" analysis, including the nature, severity, duration and permanent impact of the impairment. *McIntosh v. Brookdale Hosp. Med. Ctr.*, 942 F. Supp. 813 (E.D.N.Y. 1996), *aff'd*, 125 F. 3d 844 (2d Cir. 1997). This analysis requires the plaintiff to do more than "merely submit evidence of a diagnosis of an impairment ... the ADA requires [individuals] to prove a disability by offering evidence [demonstrating] that the extent of the limitation caused by the impairment is substantial." *McCowan,* 689 F. Supp.2d at 400 (quoting *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002)) (internal quotation marks omitted).

While plaintiff's lack of independent medical evidence is not necessarily fatal to her claims, then, the absence of such evidence does weaken her claim, and renders summary judgment in her favor inappropriate. *See*, *e.g.*, *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379 (S.D.N.Y. 1998)

("Douglas' testimony as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA"); *Ivaniuc v. Hauer Knitting Mills, Inc.,* No. 94 CV 5905, 1998 WL 57077 at *6 (E.D.N.Y. Feb. 5, 1998) ("Plaintiff has offered no evidence, other than his self-serving statements ... showing that his employment is substantially limited. He has offered no medical evidence whatsoever as to his disability. As such, his bare assertions that he is unable to work ... do not render him disabled under the case law"); *Johnson v. St. Clare's Hosp.,* No. 96 CIV. 1425, 1997 WL 113795, at *1-*2 (S.D.N.Y. Mar. 12, 1997) (ruling that if plaintiff failed to present "specific medical evidence" in support of his claims, court would recommend summary judgment in favor of defendants).

In short, absent medical evidence, plaintiff's claims are based on her subjective statements about her physical limitations, and her own opinions about their cause. Whether that is sufficient to sustain a jury verdict in her favor remains to be seen, but it is not enough for this Court to find that she is disabled as a matter of law.

Plaintiff may also establish a claim by showing that she was "regarded as having ... an impairment" by defendants. This means that plaintiff must show that at some point in the past, "she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *Sherrod v. American Airlines*, 132 F.3d 1112, 1120-21 (5th Cir. 1998). With respect to the major life activity of working, plaintiff must show that defendants regarded her as significantly restricted in her ability to perform a class or a broad range of jobs. *Whitehead v. United Parcel Service, Inc.*, 387 Fed.Appx. 16, 18 (2d Cir. 2010); *Hammon v. Keyspan Energy*, 349 Fed.Appx. 629, 631 (2d Cir. 2009).

Again, I cannot find for plaintiff on this issue as a matter of law. Gaulin may have known that plaintiff's physical abilities were limited in some respects, but on the record before me it is not clear that she regarded plaintiff as substantially limited in a major life activity. In addition, although walking is a major life activity, *see* 29 C.F.R. § 1630.2(i), it is not clear to what extent plaintiff's difficulty walking played a role in her termination, since the job she held at the time of her

termination does not appear to have required much if any walking, and by that time plaintiff was using a scooter, so she was presumably able to get around reasonably well. In addition, the reasons given by defendants for plaintiff's termination–which are discussed in more detail below–did not include her lack of mobility.

### III. Other Factual Issues

There are a number of other factual issues here that also preclude summary judgment in plaintiff's favor. First, there are issues concerning whether Westgate had notice of plaintiff's alleged disability, which is a prerequisite to imposing liability on Westgate. *See* 42 U.S.C. §12112(b)(5)(A).

Plaintiff claims that there are no questions of material fact as to whether Westgate had notice of her disability because she disclosed her limitations to LaMagna prior to her hiring. Dkt.#17-5 at 11. Plaintiff also argues that it was obvious from the use of her walker that plaintiff was disabled. Finally, plaintiff asserts that LaMagna's alleged knowledge of plaintiff's disability should be imputed to Westgate, since LaMagna acted as Westgate's agent with respect to hiring plaintiff. *Id.*

Defendants dispute that Westgate had knowledge of plaintiff's limitations, and point out that on her "Health Information Statement," (Dkt. #24-1), which she filled out when she was hired, plaintiff answered "no" to the question, "Are there any physical limitations or restrictions on the type of work or number of daily hours you may undertake?" *Id.* at 3.

Once again, there are issues of fact concerning this matter. Even assuming that LaMagna was aware of some of plaintiff's physical limitations, it is not clear that her knowledge should be imputed to Westgate, particularly in light of plaintiff's own statement on her health information form that she did not have any relevant physical limitations.

Furthermore, it is not clear precisely what plaintiff told LaMagna about her physical limitations. LaMagna states in an affidavit that plaintiff "disclosed to [her] that she had certain physical disabilities and limitations that affected her mobility and eyesight," Dkt. #17-3 ¶ 10, but that rather vague statement falls far short of establishing, as a matter of law, that LaMagna, much less

Westgate, had knowledge of plaintiff's claimed disability. *See Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir. 1996) ("vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA").

There are also factual issues concerning whether plaintiff could perform the essential functions of her job. The ADA prohibits discrimination "against a qualified individual on the basis of disability," 42 U.S.C. §12112, and defines a "qualified individual" as a person who, "with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8).

In the case at bar, there is a factual dispute surrounding exactly what plaintiff's job functions were, and if she was indeed able to competently perform the essential duties of her job, even with reasonable accommodation. Plaintiff relies on LaMagna's affidavit to support the contention that plaintiff was hired for "a full time desk position," Dkt.#17-5 at 2, and that plaintiff was able to meet LaMagna's expectations for that position. Defendants, however, contend that plaintiff "could not legibly draft a care plan, physically assess the patients or properly supervise the nurse manager," nor could she ensure the safety and needs of her patients, all of which, Gaulin contends, were essential functions of plaintiff's job. Dkt.#28-4 at 5-6. Resolution of these disputes involves credibility assessments, which are "particularly ill-suited" for determination at the summary judgment stage. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010).

Still more factual issues exist concerning whether defendants made reasonable accommodations for plaintiff's alleged disabilities, and whether those disabilities led to her termination. There is evidence that defendants made some effort to accommodate plaintiff's physical limitations, such as by affixing a basket to her walker to help her carry patient charts, by moving her desk closer to the place where charts were kept, and by reserving a parking spot for her relatively close to the door of her building. Despite plaintiff's allegation that she was not given proper training, plaintiff's transfer to a job in the medical records department could also be seen as an attempt to accommodate her, by minimizing the amount of walking she needed to do.

There are also conflicting versions of why plaintiff was terminated. Defendants contend, in essence, that plaintiff simply failed at her job, and that the precipitating event was plaintiff's deletion of an entire patient chart. That event has no obvious connection to plaintiff's alleged disability, and again presents an issue best resolved by a trier of fact. *See Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) (where plaintiff police officer experienced diabetic reaction while driving squad car, which led to his driving erratically at high speeds until pulled over by other officers, employer was justified in terminating him, despite plaintiff's assertion that he should be given a "second chance").

In short, on the record before me, I find that this case is rife with factual issues, particularly when it is the plaintiff–who bears the ultimate burden of proof–that is moving for summary judgment. Her motion is therefore denied.

## CONCLUSION

Plaintiff's motion for summary judgment (Dkt. #17) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        July 29, 2013.